**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Keith Pellerin, having been duly sworn, state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since approximately February 12, 2023.  Since June of 2025, I have been assigned to the FBI Springfield Resident Agency.  Prior to this assigned location, I was assigned to investigate criminal matters within the FBI New York City area of operations.  I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(C); that is, a government agent engaged in enforcing federal criminal laws and duly authorized by the Attorney General to request search warrants and make arrests.

2.      Since joining the FBI, I have investigated violations of federal law, including white collar crimes, public corruption crimes, transnational organized crime, among others. Prior to my role with the FBI, I was employed as a law enforcement officer and detective with the Longmeadow Police Department.  I am a graduate of the FBI Academy and the Municipal Police Training Committee.  I have participated in the drafting and execution of complaints and search warrants.  In addition, I have received specialized training in interview and interrogation techniques, search warrant applications, evidence identification and collection, arrest procedures, and various other criminal law procedures.

3.      This affidavit is submitted in support of an application for a criminal complaint charging CHRISTOPHER BARBARO (hereinafter "BARBARO") with two crimes: (i) harassing another person and thereby hindering a person from assisting in a criminal prosecution, or attempting to do so, in violation of 18 U.S.C. § 1512(d)(4); and (ii) threatening to cause bodily

injury with intent to retaliate against a witness, or attempting to do so, in violation of 18 U.S.C. § 1513(b)(2).

4.      As described below, there is probable cause to believe that (i) between at least November 2024 and December 2025, BARBARO intentionally harassed a person assisting in a criminal prosecution, or attempted to do so, and (ii) in or around December 2025, BARBARO knowingly threatened to cause bodily injury to another person with the intent to retaliate against a person for information given to a law enforcement officer relating to the commission or possible commission of a federal offense, or attempted to do so.

5.      This affidavit is based on my personal investigation and investigation by others, including law enforcement officials whom I know to be reliable and trustworthy. The facts contained herein have been obtained by conferring with witnesses, other law enforcement officers and examining evidence obtained in the course of the investigation as well as through other means. This affidavit does not include every fact known to me about this investigation, but rather only those facts sufficient to establish probable cause.

## STATEMENT OF PROBABLE CAUSE

### *Investigation Into Zaldivar and Kaufman*

6.      In 2024, federal investigators (led by the FBI) and a federal grand jury began investigating David Kaufman, Darren Zaldivar, and others for various federal crimes, including transporting individuals across state lines for commercial sex and sex trafficking of minors. BARBARO is the maternal grandfather of Darren Zaldivar; Zaldivar was identified early in the investigation as a potential target.

7.      As part of this investigation, in or around October 2024, investigators interviewed several potential victims, witnesses, and subjects, including "Victim 1," an individual whose

2

identity is known to me, and someone who was identified early in the investigation as a potential victim.  In or around October 2024, investigators also interviewed Victim 1's father (hereinafter "Victim 1F").  In response to law enforcement inquiries, Victim 1 and Victim 1F both provided information to investigators, including information about Zaldivar.

8.    In or around October 2024, investigators also interviewed Zaldivar.  Based on the topics discussed between Zaldivar and investigators, Zaldivar became aware by October 2024—if he was not already aware before—that conduct involving Victim 1, including Zaldivar's own conduct involving Victim 1, was part of an ongoing federal investigation.

### *Threatening and Harassing Communication from Barbaro in November 2024*

9.    On or about November 9, 2024, after Zaldivar had been interviewed by the FBI and was therefore aware of the existence of the federal investigation, BARBARO (Zaldivar's grandfather) sent Victim 1F (Victim 1's father) a text message. This message has been recently obtained and reviewed by investigators.  This message was sent to Victim 1F from a phone number ending in 3001, which, according to records obtained from Verizon, belongs to BARBARO.  A screenshot of that message from BARBARO to Victim 1F appears below:

iMessage
Sat, Nov 9 at 10:04 PM

You and your kid are a couple of fuckin rats 🐀 and you know what happens to rats they choke on cheese you no good mother fucker I know what you guys did

10.    Based on my training, experience, and familiarity with this investigation, I understand that "rats" is a pejorative term for someone believed to have spoken with law enforcement.

11.    Based on my training, experience, and familiarity with this investigation, I believe there is probable cause to believe that this communication from BARBARO to Victim 1F, sent after BARBARO's close family member was under federal investigation and after investigators had interviewed Victim 1 and Victim 1F, was an attempt to threaten or harass a person assisting in a criminal prosecution, in violation of 18 U.S.C. § 1512(d)(4).  My belief is further supported by other evidence summarized below, including additional communications from BARBARO.

### The Ongoing Prosecution of Zaldivar and Kaufman

12.    On May 13, 2025, a grand jury returned a superseding indictment charging David Kaufman and Darren Zaldivar with four counts: Count One charges Kaufman with persuading Victim 1 to travel to engage in prostitution, in violation of 18 U.S.C. § 2422(a); Count Two charges Zaldivar with transporting Victim 1 with the intent to have Victim 1 engage in prostitution, in violation of 18 U.S.C. § 2421; Count Three charges Kaufman and Zaldivar with a conspiracy to engage in sex trafficking of Minor Victim A, in violation of 18 U.S.C. § 1594(c); and Count Four charges Kaufman with sex trafficking of Minor Victim A, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2).  *See United States v. David Kaufman & Darren Zaldivar*, Case No. 25-CR-30025-MGM (D. Mass.), ECF. No. 34.  Those charges remain pending.

13.    "Victim 1" listed in the pending indictment against Zaldivar and Kaufman is the same "Victim 1" discussed above, who was interviewed by investigators in October 2024 (and on other occasions), and whose father, Victim 1F, received the threatening or harassing message from BARBARO in November 2024 after Victim 1 and Victim 1F were interviewed by investigators.

14.    On May 14, 2025, Zaldivar was arrested and made his initial appearance. The government moved for pretrial detention based on Zaldivar's danger to the community and risk of obstruction of justice. After a hearing, the court denied the government's motion and released Zaldivar on conditions. Case No. 25-CR-30025-MGM, ECF No. 47. Among other conditions, the Court ordered Zaldivar not to have any direct or indirect contact with any victims or witnesses in the case or any of their immediate family members. Zaldivar then returned to the community to live with his mother in Ludlow, Massachusetts.

15.    On August 4, 2025, Zaldivar was arrested on a petition filed by the U.S. Probation Office that alleged multiple violations of his release conditions. The government moved to revoke Zaldivar's pretrial release based on allegations that he left the state without permission, committed assault and battery with a dangerous weapon, consumed alcohol, and obstructed justice. The Court granted the government's motion and detained Zaldivar pending trial. Case No. 25-CR-30025-MGM, ECF No. 135. Zaldivar has remained in detention at the Donald W. Wyatt Detention Facility in Rhode Island ("Wyatt") since that time.

### Threatening and Harassing Communication from Barbaro in December 2025

16.    On December 15, 2025, the Court issued an order setting Zaldivar and Kaufman's trial for May 11, 2026.[1] Case No. 25-CR-30025-MGM, ECF No. 183. Based on the nature of the charges and based on discovery produced by the government to Zaldivar, Victim 1 and Victim 1F are both potential witnesses at Zaldivar and Kaufman's trial.

17.    On December 16, 2025, the day after the Court set a date at which Zaldivar would face trial for his role in the victimization of Victim 1 and for his involvement in the sex trafficking

---

[1]    On March 9, 2026, upon a joint motion from all parties, the Court continued the trial date to September 28, 2026. *See* Case No. 25-CR-30025-MGM, ECF No. 213.

of Minor Victim A—an upcoming trial at which Victim 1 and Victim 1F are potential witnesses—

BARBARO left this voicemail on Victim 1F's phone:

> *You listen to me you good motherfucking rat.*
> *You threw my daughter under the fucking bus.*
> *You cocksucker.*
> *I'm gonna get ahold of you at your fucking office, you prick.*
> *Be ready!*

18.    As discussed above, BARBARO had previously sent a threatening or harassing

message to Victim 1F based on BARBARO's belief that Victim 1 and his son were "rats" who had

provided information to law enforcement.  This December 2025 communication seemed to be a

further effort to threaten, intimidate, or harass someone who provided information to law

enforcement. A follow-on investigation has uncovered evidence to show why BARBARO

harassed and threatened Victim 1F for providing information not only about Zaldivar, but also

about Zaldivar's mother [BARBARO's daughter].

19.    As part of the ongoing obstruction investigation, a federal grand jury subpoena was

issued to Wyatt to obtain, among other things, recordings of phone calls Zaldivar made on

December 16, 2025—the date when BARBARO made the threatening or harassing call to Victim

1F.  Wyatt records show that on December 16, 2025 at 7:41 p.m., Zaldivar had an approximately

12-minute call with a phone number belonging to his mother (hereinafter "Zaldivar's Mother").

20.    Inmate calls at Wyatt are recorded, and I have reviewed the recording of this 7:41

p.m. call.[2]  During this call, Zaldivar told a female who I believe to be Zaldivar's Mother (based

on the phone number, voice, and content of the conversation) that he had met with his attorney

earlier that day. The recording of the call includes the following:

---

[2]    Any quotes from calls or recordings discussed in this affidavit reflect a rough, good-faith transcription of what I and other investigators have personally heard on these calls or recordings. Any discussed recordings are in English and do not require any translation.  Any discussed recordings have not been professionally transcribed at this stage.

6

| | |
|---|---|
| Zaldivar's Mother: | *Oh my God. Did you guys talk about anything good or –* |
| Zaldivar: | *Yeah, I read, I read all of [Victim 1F's] statement and half of Victim 1's.* |
| Zaldivar's Mother: | *The dad?* |
| Zaldivar: | *Yeah. The dad called you a horrible mom.* |
| Zaldivar's Mother: | *Oh really? Oh really?* |
| Zaldivar: | *Yeah.* |
| Zaldivar's Mother: | *Literally?* |
| Zaldivar: | *He's like, from my experience, his mom is horrible. So I had to be the nice guy and since his dad hasn't been around, I let him stay, stay at my house…* |

* * *

| | |
|---|---|
| Zaldivar: | *… Where's [Zaldivar's Stepfather[3]]? So I can talk to you both –* |
| Zaldivar's Mother: | *He's here. Hold on. Go ahead.* |
| Zaldivar's Stepfather: | *Hello. What's up man?* |
| Zaldivar: | *What's up dude? So, so [my attorney] is coming back here Tuesday, but [Victim 1F] wrote a huge, wrote a huge shit talking thing about Mom. [Victim 1F] the big guy about mom.* |
| Zaldivar's Stepfather: | *Oh really?* |
| Zaldivar: | *About how she's a shit mom. And then my dad's not around so he was trying to be nice by letting me stay with him.* |

21.     As previously discussed, during the investigation into Zaldivar and Kaufman, investigators interviewed Victim 1F and asked Victim 1F for various information. FBI investigators then wrote a report summarizing that interview.  Among other things, the FBI report

---

[3]      In the recorded call, Zaldivar used the first name of his Mother's partner, who lives in the same home as Zaldivar's Mother.

discusses how Victim 1F allowed Zaldivar to live in his home for a period of time and the circumstances surrounding Zaldivar moving in with Victim 1 and Victim 1F temporarily.

22. It is my understanding that FBI report of Victim 1F's interview was produced to Zaldivar's counsel in discovery. Based on my review of the call from Zaldivar to Zaldivar's Mother on December 16, 2025 at 7:41 p.m., Zaldivar learned of that particular report on or about December 16, 2025. Zaldivar then shared with his mother and stepfather that day that Victim 1F had provided information to investigators about both Zaldivar and Zaldivar's Mother.

23. On December 16, 2025 at 8:36 p.m., within an hour after Zaldivar, Zaldivar's Mother, and Zaldivar's Stepfather discussed Victim 1F's statement to FBI agents, phone records from Verizon show that BARBARO's phone (with phone number ending in 3001) placed a call to Zaldivar's Mother's phone. The call lasted approximately five minutes, ending at approximately 8:41 p.m.

24. Almost immediately after finishing the call with Zaldivar's Mother, BARBARO called Victim 1F at 8:42 p.m. Verizon records confirm that call was made from BARBARO's phone number ending in 3001. Victim 1F did not answer that call, and BARBARO left the aforementioned voicemail for Victim 1F, stating, "You listen to me you good motherfucking rat. You threw my daughter under the fucking bus. You cocksucker. I'm gonna get ahold of you at your fucking office, you prick. Be ready!"

25. Based on my training and experience, and the facts and circumstances of the case, I believe that BARBARO intended this message to be threatening or harassing, and BARBARO communicated this message as a direct response to learning about Victim 1F providing information in the pending federal investigation. As part of the ongoing obstruction investigation, Victim 1F also informed investigators that he found the message to be threatening when he listened to it.

8

26.    Approximately five minutes after leaving the voicemail, Verizon records confirm that BARBARO called Victim 1F again at 8:48 p.m. Victim 1F answered that call and BARBARO, in sum and substance, again called Victim 1F a "rat" and again made a direct connection between his statements and Victim 1F providing information to law enforcement about BARBARO's daughter (Zaldivar's Mother).  BARBARO made other statements on that call that Victim 1F perceived as threatening and scary.

27.    At approximately 8:58 p.m. on December 16, 2025, a few minutes after his second phone call to Victim 1F, Verizon records show that BARBARO's phone called Zaldivar's Mother's phone again. That call lasted approximately a minute and a half.

### Other Evidence of Threatening or Harassing Communications by Barbaro

28.    On February 19, 2026, BARBARO, on his own, contacted a national FBI tipline stating that he wished to provide information regarding the prosecution of Zaldivar and Kaufman.

29.    On March 2, 2026, BARBARO voluntarily came to an FBI office to share information he believed was relevant to the government's prosecution of Zaldivar and Kaufman. During this interview, BARBARO voiced various complaints about the ongoing investigation and prosecution of Zaldivar, his grandson.  In addition, BARBARO made allegations of corruption or inappropriate conduct by agents, attorneys, witnesses, and others involved in the ongoing prosecution.  When asked on multiple occasions if he had any firsthand knowledge or proof of any of the allegations he was making, BARBARO stated that he did not and that he received all of his information related to this investigation from his daughter.

30.    In that March 2, 2026 meeting, which was recorded, BARBARO admitted to making communications to Victim 1F.  BARBARO also confirmed to the FBI that he knows where Victim 1F lives and works.  Notably, BARBARO made approximately *two dozen references* to

Victim 1F or Victim 1 being "rats" who had provided information to law enforcement, thus not only confirming the nature of his messages to Victim 1F, but also confirming that he was making these messages as a direct response to Victim 1F and Victim 1 providing information to law enforcement. Among other things, BARBARO made the following statements to the FBI about his communications with Victim 1F:

   o *I called [Victim 1F] up and told him he was an effing rat. Okay. And that's what he is. Because you need some cheese pal. 'Cause he's a rat. Alright.*

   o *Yeah, I told him to go fuck himself in plain English. Excuse me, alright? Okay, he's a rat. I mean, why'd he do that? My grandson was living there for six months with this guy....*

31.    During the interview, BARBARO also indicated that in addition to contacting Victim 1F and calling him a "rat," he had also done the same to Victim 1:

   o *I had words with the kid, I'm not gonna lie to you. You know, I told the kid, I said, "You do that to a friend? You run and turn on a friend? I said, that's what you do? Sure. Rat like your old man."*

32.    During the interview, BARBARO confirmed that he sent multiple messages or communications to Victim 1F, limited not only to the phone but also extending to Facebook:

   o *Cause, you know, when somebody says you got a green light on the guy. I don't, I'm not doing nothing today. I won't go near him, but yeah, I'll call him or I'll send him a Facebook message every now and then. Tell him he's a effing rat for what he did to my grandson...*

33.    Based on my training and experience, these types of communications sent to victims and witnesses, especially on multiple occasions and across multiple mediums, have the potential to hinder, delay, prevent, or dissuade people from assisting in federal investigations.

34.    Although BARBARO denied at various points that he ever "threatened" Victim 1F, when asked about his purpose in calling Victim 1F and what he would do if he saw Victim 1F in person, the following exchange occurred:

10

FBI AGENT: *So what is the purpose of calling him?*

BARBARO:  *Huh?*

FBI AGENT: *When you call…*

BARBARO:  *I was gonna let him know he is a rat. That's what the purpose is. And I wanted to see him and he wouldn't see me.*

FBI AGENT: *Well, what would you do if you saw him?*

BARBARO:  *I'd beat the shit out of him! Okay, miss? That's what I'd do! After what he did to my grandson? After what he did to my grandson? He shouldn't get a pass and walk around like he's doing. Alright? Maybe I'm a little old school, but you don't do that to somebody and walk around and go in there and bring four or five rats with more cheese. Come on!*

FBI AGENT: *So you would beat up [Victim 1F]?*

BARBARO:  *I'd like to smash his face is what I'd like to do, for what he did miss. I'll be honest with you. You can write that down. Take it as a threat. Whatever you wanna do. But that's my feelings towards him. Alright? He's a slippery SOB.*

35.    At the end of the interview, BARBARO told FBI agents, "*Alright. Get rid of those tapes?*" An agent asked, "which ones?" BARBARO responded, "*The ones you said I threatened somebody. How about you just hit the erase button by mistake?*"

## CONCLUSION

36.    Based on my training, experience, and familiarity with this investigation, and the evidence summarized above, I believe there is probable cause to believe that (i) between at least November 2024 and December 2025, BARBARO intentionally harassed a person assisting in a criminal prosecution, and attempted to do so, and (ii) in or around December 2025, BARBARO knowingly threatened to cause bodily injury to another person with the intent to retaliate against a person for information given to a law enforcement officer relating to the possible commission of a federal offense, and attempted to do so.

11

37.     Accordingly, I believe there is probable cause for the issuance of a Criminal Complaint charging BARBARO with two crimes: (i) harassing another person and thereby hindering a person from assisting in a criminal prosecution, or attempting to do so, in violation of 18 U.S.C. § 1512(d)(4); and (ii) threatening to cause bodily injury with intent to retaliate against a witness, or attempting to do so, in violation of 18 U.S.C. § 1513(b)(2).

_Keith Pellerin /by Paul G. Levenson_
KEITH PELLERIN
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by phone, on March 26 2026, at Boston, Massachusetts.

HON. PAUL G. LEVENSON
United States Magistrate Judge

12